UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BERNADINE NILES,

                      Plaintiff,

     - against -                                      05 CV 8781 (RJH) (GWG)

FAIRWAY CENTRAL SERVICES CORP.,                 SECOND AMENDED
                                                                     COMPLAINT

                      Defendant.
------------------------------------------------------------X

Plaintiff Bernadine Niles ("Plaintiff" or "Niles"), by her attorney, Law Office of Vincent I. Eke-Nweke, P.C., as for her Second Amended Complaint (by leave granted pursuant to the endorsed Order of Honorable Gabriel W. Gorenstein dated May 16, 2006 ), complains of Defendant Fairway Central Services Corp. ("Defendant" or "Fairway"), and alleges upon information and belief, as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action to remedy race discrimination, hostile work environment in employment and retaliation for complaining about Defendant's discriminatory acts, breach of contract, in violation of the Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§1981"), the New York State Human Rights Law, Executive Law § 269 *et seq.* ("Human Rights Law"), the New York City Civil Rights Law ("City Law") and the Common Law of the State of New York.

2. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to Title VII, § 1981, Human Rights Law, the City Law and the Common Law of New York.

## II. JURISDICTION AND VENUE

3. Jurisdiction of the subject matter of this action is established in this court by Title VII and § 1981.

4. All causes of action not relying exclusively on the aforementioned federal causes of action as a basis of this court's jurisdiction, are based on the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, to hear related state law causes of action. The events, parties, transactions, and injuries that form the basis of Plaintiff's federal claims are identical to the events, parties, transactions, and injuries that form the basis of Plaintiff's claims brought under the Human Rights Law.

5. As the unlawful employment practices complained of herein occurred within the Southern District of New York and Defendant regularly does business within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

## III. SATISFACTION OF PROCEDURAL PREREQUISITES FOR SUIT

6. Plaintiff has complied with all procedural prerequisites required by law prior to initiating this action.

7. On or about August 3, 2004, Plaintiff caused a charge of discrimination to be filed against the Defendant with the Equal Employment Opportunity Commission ("EEOC"). The charge was timely filed under Title VII.

8. By Notice of Suit Rights dated June 21, 2005, the EEOC advised plaintiff of her right to sue on the charge. This action was timely commenced on or about September 19, 2005.

## IV. THE PARTIES

9. Plaintiff is an African American Female. At all relevant times Plaintiff was resident within the City and State of New York and is an employee within the meaning of Title VII, § 1981, Human Rights Law, and the City Law.

10. Defendant is a domestic business corporation, duly incorporated under the laws of the State of New York and has its principal office and place of business located in Manhattan, City and State of New York. At all times relevant, Defendant was and still is the holding company, parent, affiliate or alter ego of Fairway Plainview, LLC, Fairway London Foods, LLC., Fairway Operating Corp., Fairway Wholesale & Distribution Co., Inc., and other corporations, all of which act together or jointly as one entity and are treated and regarded as one entity.

11. Defendant is an employer within the meaning of Title VII, § 1981, Human Rights Law, and the City Law and at all relevant times employed and still employs more than 150 employees.

## V. FACTUAL ALLEGATIONS

12. Plaintiff began her employment with the Defendant in April 2001, as an Assistant to the Office Manager and was assigned to Defendant's store located at 50 Maneto Hill Mall, Plainview, New York.

13. Plaintiff's job performance during her entire tenure with the Defendant was always satisfactory. Plaintiff consistently received positive feedback from Defendant's management personnel for her job performance. Plaintiff never had any performance issues or problems throughout her employment with the Defendant.

14. In recognition of Plaintiff's satisfactory job performance, in or about June 2001, Defendant promoted Plaintiff to the position of Office Manager and placed her on a total compensation package of approximately $60,000.00 per annum.

15. Despite Plaintiff's satisfactory job performance, hard work and loyalty to Defendant, beginning from about April 2003, Rick Garcia ("Garcia"), Hispanic, then General Manager of Defendant's Plainview store, began to subject Plaintiff to closer scrutiny and criticism than similarly situated Hispanic employees and continually harass Plaintiff and subject her to verbal abuse, insulting remarks, open hostility, hostile work environment, retaliation, termination of employment and discriminatory terms conditions or privileges of employment.

16. Specifically, in April 2003, Garcia repeatedly requested Plaintiff to terminate the employment of Karla Salina, ("Salina"), a pregnant employee who was then employed by Defendant as a Receiving Clerk at Defendant's said Plainview store.

17. Garcia requested Plaintiff to fire Salina because Salina was then pregnant and was seeking to join a union for collective bargaining purposes. Upon Plaintiff's refusal to fire Salina, Garcia then repeatedly requested Plaintiff to make Salina's work very difficult so that Salina would be forced to quit her job.

18. Plaintiff refused to comply with Garcia's unlawful directive to fire Salina or cause her to be constructively discharged. Also, Plaintiff reported Garcia's requests to Defendant's Human Resources Department.

19. Plaintiff's refusal to comply with Garcia's unlawful requests to discharge Salina, did not deter Garcia from pursuing his discriminatory goals. Garcia succeeded in transferring Salina from her clerical position to cashier position, which position, required Salina to stand up for long

periods of time. Garcia informed Plaintiff that he had transferred Salina to the cashier position with the intention of making Salina as uncomfortable as possible so that Salina would eventually quit her job.

20. In May 2003, Plaintiff witnessed Garcia's inappropriate sexual behavior toward a 19 year old female employee, Laura Dadich ("Dadich"). Also, Dadich reported to Plaintiff that Garcia had been physically sexually harassing her for some time, and that Garcia's actions made her (Dadich) uncomfortable and caused her fear and embarrassment. Specifically, Dadich reported to Plaintiff that Garcia picked her up, unzipped her shirt, pulled at her pants, and repeatedly asked her about her sexual activities. Again, Plaintiff reported the alleged improper sexual conduct by Garcia to Defendant's Human Resources Department.

21. At the time Plaintiff made said reports to Defendant's Human Resources, Plaintiff reasonably believed and still believes that Garcia was discriminating against Salina and Dadich on the basis of their sex.

22. As a result of Plaintiff's said reports to Defendant's Human Resources Department, Garcia discriminated against Plaintiff and retaliated against her for making said reports, among other things, by subjecting Plaintiff to a hostile work environment, continual harassment, intimidation, verbal abuse, insults, vulgar and/or profane language, and excluded Plaintiff from management meetings.

23. As a further result of Plaintiff's said reports to Defendant's Human Resources Department, on or about May 25, 2003, Garcia terminated Plaintiff's employment with defendant and replaced Plaintiff with Dayhana Peña, a Hispanic female, who was considerably less qualified and less experienced for the position than Plaintiff.

24. Plaintiff believed and still believes that the May 2003, termination of her employment was in violation of her civil rights, consequently, on or about July 22, 2003, Plaintiff filed a charge with the EEOC against Defendant for employment discrimination and retaliation. The charge bears number 160-2003-02069.

25. Following settlement discussions, the parties attempted to amicably settle the issues arising from said discrimination and retaliation charge. In connection therewith, Defendant, among other things, agreed as follows:

   a. To re-instate or re-employ Plaintiff in the position of a Pricing Manager at Defendant's corporate offices located at 2127 Broadway, New York, New York, and pay Plaintiff an annual salary of $55,000.00;

   b. That said employment shall commence no later than September 22, 2003;

   c. That as Pricing Manager Plaintiff will be under the direct supervision of Marlene Brown, who was one of Defendant's management employees;

   d. Not to terminate Plaintiff's employment except for "cause."; and

   e. That after October 1, 2004, Plaintiff shall become an at-will employee.

26. Immediately following the attempted settlement through the present time, Defendant intensified its discriminatory and retaliatory conduct toward Plaintiff, by failing to employ Plaintiff as a Pricing Manager, by assigning Plaintiff duties that were inconsistent with her title, by transferring and/or assigning Plaintiff against Plaintiff's will to work at a location outside Defendant's said corporate offices, by requiring Plaintiff to report directly to Carmela London instead of Marlene Brown, by threatening to terminate Plaintiff's employment, by depriving Plaintiff of employment benefits, such as Defendant's flexible spending program, by requiring Plaintiff to

perform purely clerical and/or secretarial duties, by scrutinizing and closely monitoring the manner in which Plaintiff performed her work duties, by subjecting plaintiff to offensive comments, curses, insults and referring to Plaintiff as a "fat ass", by unjustly reprimanding and treating Plaintiff in a demeaning and abusive manner, by subjecting plaintiff to a hostile and hazardous work environment, thereby causing Plaintiff to be diagnosed with serious health conditions, and by subjecting Plaintiff to other discriminatory terms conditions or privileges of employment.

27. Following the parties alleged attempted amicable settlement agreement, Plaintiff resumed work with the Defendant on September 21, 2003. However, in violation of the alleged settlement agreement and in retaliation against Plaintiff, Defendant failed to employ Plaintiff as a Pricing Manager, rather, Defendant utilized Plaintiff as a check issuer for Defendant's Accounts Payable Department.

28. As a check issuer, Plaintiff worked under the supervision of Marlene Brown, who was not the Accounts Payable Supervisor. On several occasions, when Plaintiff had a question concerning her check issuing duties, Marlene Brown referred Plaintiff to the actual Accounts Payable supervisor, Melanie Sanchez, who ignored Plaintiff or spoke to her in boisterous and demeaning manner in the presence of other employees.

29. In further violation of the alleged settlement agreement and in retaliation against Plaintiff for her complaints of discrimination, Defendant failed to employ Plaintiff at Defendant's said corporate offices, rather Defendant transferred Plaintiff against her will to Defendant's Fairway London Foods, LLC., offices located at the premises known as 458 9th Avenue, New York, New York, and assigned Plaintiff to a tiny office space which was located in a kitchen at said premises.

30. The tiny office space to which Plaintiff was assigned to was excessively hot given that said office space was located right behind giant stoves, had no ventilation, window or air conditioning, and was infested with mice, insect and flies. In addition, when it rained water would come into the office space.

31. Said office space was extremely unsanitary and uncomfortable, and had other critical deficiencies which made it unhealthy for human habitation. In fact, the results of an inspection conducted of said kitchen in or about June 2004, by the New York State Department of Agriculture and Markets Division of Food Safety and Inspection show "critical deficiencies."

32. Despite Plaintiff's complaints about the hazardous and unhealthy conditions of the office space, Defendant refused to take any steps to improve the conditions at the office or to assign Plaintiff a different office space or location. The conditions of the office space was so unbearable that on June 8, 2004, an especially hot day, Plaintiff was constrained to leave the office space because, despite Plaintiff's best efforts, she could not work under such conditions.

33. As a result of Plaintiff's unhealthy working conditions, Plaintiff was diagnosed with severe respiratory ailments, which necessitated many visits to Plaintiff's physician.

34. Although Defendant acknowledged that the conditions of the office space did not meet even minimally acceptable standards, and was also, aware that said conditions were causing severe damage to Plaintiff's health, Defendant nevertheless, continued to subject Plaintiff to said unhealthy working conditions. Plaintiff is the only employee of Defendant who was subjected to such unhealthy working conditions.

35. Defendant made Plaintiff work in the unhealthy office until June 18, 2004, when Defendant notified Plaintiff that she had been re-assigned to Defendant's corporate offices and that

she should start reporting to work at said corporate offices effective June 21, 2004. As she was directed, on June 21, 2004, Plaintiff began to report for work at said corporate offices.

36. On or about June 23, 2004, in the course of a staff meeting, it was requested of Marlene Brown to restore the duty of check issuing to Plaintiff, which duty Plaintiff had performed prior to her transfer out of the corporate offices. Marlene Brown responded to this request by stating that, no one was to mention Plaintiff's name in the office and that she (Marlene Brown) didn't give a "fuck" if Plaintiff was informed of her comments.

37. On or about July 9, 2004, Defendant further breached the alleged settlement agreement, discriminated and retaliated against Plaintiff by discharging Plaintiff from defendant's employment on the pretextual ground that there was no work for Plaintiff. In actual fact, at the time of Plaintiff's discharge, there was abundant work at Defendant's corporate offices which could have been assigned to Plaintiff. However, rather than assign Plaintiff any work, Marlene Brown recruited her daughter and two of her friends to work for Defendant.

38. Furthermore, at the time of Plaintiff's discharge, Defendant had several open positions that Plaintiff was qualified to occupy, including the Office Manager position at Defendant's 74th Street, New York, New York, location.

39. Upon discharging Plaintiff from its employment, Defendant advised Plaintiff that she would be paid her salary through October 04, 2004. When Plaintiff requested for her salary which was then due in the amount of $1,200.00, Defendant informed Plaintiff that a check for that amount would be mailed to Plaintiff.

40. However, Plaintiff never received any such check. Upon further request for the check, Defendant informed Plaintiff that Defendant will no longer mail the check to Plaintiff nor

9

pay her salary through October 4, 2004, because Plaintiff filed the August 3, 2004, EEOC charge against Defendant. The last date Defendant paid Plaintiff was August 12, 2004.

41. Defendant was fully aware of the retaliatory and discriminatory conduct against Plaintiff and encouraged such conduct by failing to take any action to remedy the situation, even though Plaintiff made several complaints in connection thereto.

42. Defendant follows a policy or practice that discriminates and/or encourages retaliation against Plaintiff and other employees for their opposition against Defendant's unlawful employment practices.

43. Defendant never intended to re-employ Plaintiff as provided in the alleged settlement agreement, but entered into the agreement with the malicious intent to use the agreement as a ruse to circumvent the consequences of the discriminatory and retaliatory conduct alleged in Plaintiff's July 22, 2003, EEOC charge.

## FIRST CAUSE OF ACTION TITLE VII AND § 1981 DISCRIMINATION

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Second Amended Complaint with the same force and effect as if set forth herein.

45. By the acts and practices described herein, Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race in violation of Title VII and § 1981.

46. In taking the above-described discriminatory actions, Defendant acted with malice and/or reckless indifference to Plaintiff's rights under Title VII and § 1981.

47. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## SECOND CAUSE OF ACTION TITLE VII AND § 1981 RETALIATION

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 of this amended Complaint with the same force and effect as if fully set forth herein.

49. In retaliation for Plaintiff's complaints about Defendant's discriminatory and retaliatory acts, Defendant adversely affected Plaintiff's employment.

50. In taking the above-described retaliatory actions, Defendant acted with malice and reckless indifference to Plaintiff's rights under Title VII and § 1981.

51. As a result of Defendant's retaliatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## THIRD CAUSE OF ACTION HUMAN RIGHTS LAW AND CITY LAW DISCRIMINATION

52. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 51 of this amended Complaint with the same force and effect as if set forth herein.

53. By the acts and practices described herein, Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her race in violation of the Human Rights Law and the City Law.

54. In taking the above-described discriminatory actions, Defendant acted with malice and/or reckless indifference to Plaintiff's right under the Human Rights Law and the City

Law.

55. As a result of Defendant's discriminatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION
## HUMAN RIGHTS LAW AND CITY LAW RETALIATION

56. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

57. In retaliation for Plaintiff's complaints about Defendant's discriminatory acts, Defendant adversely affected Plaintiff's employment.

58. In taking the above-described retaliatory actions, Defendant acted with malice and reckless indifference to Plaintiff's rights under the Human Rights Law and the City Law.

59. As a result of Defendant's retaliatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other monetary damages unless and until this Court grants relief.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT

60. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 59 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

61. At all times relevant to this action, Defendant agreed, among other things, to employ Plaintiff in the position of a Pricing Manager at Defendant's corporate offices located at 2127 Broadway, New York, New York, pay Plaintiff an annual salary of $55,000.00, not to terminate Plaintiff's employment except for "cause", and after October 1, 2004, to employ Plaintiff as an at-will employee. These representations form part of Plaintiff's express employment contract with Defendant.

62. Prior to the termination of Plaintiff's employment by Defendants as alleged herein, plaintiff had performed all conditions, covenants, promises, duties and responsibilities required of her to be performed in accordance and in conformity with her employment contract.

63. As a proximate result of Defendant's intentional breach of the alleged contract as alleged herein, Plaintiff was diagnosed with serious permanent health conditions, including but not limited to asthma and other respiratory ailments, and has incurred and will continue to incur monetary damages in an amount to be determined by the jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter a judgment:

(a) declaring that the acts and practices complained of herein are in violation of the Title VII, § 1981, Human Rights Law and the City Law.

(b) enjoining and permanently restraining these violations of Title VII, § 1981, Human Rights Law and the City Law.

(c) directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff;

(d) directing Defendant to make her whole for all earnings she would have received but for Defendant's unlawful conduct, including, but not limited to, back and front wages, pension, bonuses, and other lost benefits;

(e) directing Defendant to award Plaintiff back pay for the termination of her employment, including, but not limited to, pension, bonuses, and other lost benefits;

(f) directing Defendant to pay Plaintiff an additional amount as compensatory damages for her pain and suffering;

(g) directing Defendant to pay Plaintiff an additional amount as punitive damages for their willful and/or reckless disregard for Plaintiff's statutory rights;

(h) awarding Plaintiff such interest as is allowed by law;

(I) awarding Plaintiff her reasonable attorneys' fees and costs; and

(j) granting such further relief as this Court deems necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury.

Dated: Brooklyn, New York
May 19, 2006

LAW OFFICE OF VINCENT I. EKE-NWEKE, P.C.

By: _____
Vincent I. Eke-Nweke (VE 5282)
Attorney for the Plaintiff
498 Atlantic Avenue
Brooklyn, New York 11217
718) 852-8300

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Second Amended Complaint was served on the attorneys for defendant herein by depositing true copies of same enclosed in post-paid properly addressed wrappers, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York at the following addresses this 19th day of May 2006:

GREENBERG TRAURIG LLP
200 Park Avenue
New York, New York 10166

ATTENTION:   Elisabeth Bernard, Esq.
             Jerrold F. Goldberg, Esq.

_____
Vincent I. Eke-Nweke